You have five minutes of time for rebuttal, correct? Yes, Your Honor. Okay. We're ready for you to proceed. Thank you, Your Honor. Thank you, Your Honor. May it please the Court. My name is Decker Kamak. I have the honor and privilege of representing the inventor, Paul Hayes, who's here today in a dispute over the validity of a patent with the PTAB. Do you agree with the board that Claim 17 is illustrative? Illustrative as to the invention, Your Honor? I believe it is. Okay. Thank you. And I... What I... That was a housekeeping question. Thank you, Your Honor. On page 1204 of the joint appendix... Just a moment, Your Honor. Let me get there. Well, I'll keep talking. I'm sorry. Your expert, Mr. Blackburn, said that Sue discloses data transmission from a power meter to a remote site over a power line, I'm quoting him, and that it would be an external network to the remote server. I... Yes, Your Honor. He did say that. How can your case go forward after that? It's over a power line. It's over... I believe, if you look at 1207, Your Honor, in the appendix, he says, I don't agree, and this is at line 11 of his deposition. The question was, and you agree with what I just asked you, and that was from Mr. Bradley, and his answer was, I don't agree that the power line is an external power line. My interpretation of that is different than what you're saying, and he said, the paragraph 8 of Sue, and I say Sue, we've gone Sue, Sue, I had a classmate at West Point who was Sue, and I defer to that, is that it includes the necessary communication components to communicate by telephone to periodically transfer collected data to a remote site. That's one possibility, but he then clarifies that he doesn't believe that the power line, whatever is communicated over a power line in Sue, or in any of the prior art, is external. On page 31 of the red brief, Itron says that you've, quote, cited certain portions of Mr. Blackburn's testimony that the board had excluded without noting the board's exclusion of that testimony. Is that true? I'm sorry, where are you, Your Honor? Page 31 of the red brief. I'd sort of be intimately aware of an allegation like that. Bottom of the page. I see it. Your Honor, the excluded testimony was also included in his deposition transcript, so it's the same testimony. I don't believe that we violated any rule by including that testimony by Mr. Blackburn. You call that excluded testimony uncontroverted in the blue brief? No, Your Honor. Page 17 of the blue brief. Blackburn makes the uncontroverted statement that a PECETA would know that you cannot connect a current consuming devices to the pre-metered external power line network. This would be stealing unmetered power line from the utility. Is that what you're referencing, Your Honor? Yeah. So this connection would be made to the post-metered existing home electrical wiring internal power line. Is it uncontroverted? No one has opposed that statement, Your Honor, to my knowledge. On page 48 of the red brief, ITRON notes that you, quote, never identify or explain any transmitting IP formatted data over an internal power line versus an external power line. A, is that true that you don't? And B, is there any technical difference? A, it is not true that we don't. As a matter of fact, the filtering technology of the patent itself discusses that you have to have filtering technology to go from the internal, which is, there is only one point. So if you're transmitting on an internal home network with, for example, X10 or HomePlug, you're transmitting to one receiving device. And so there's no point-to-point technology involved. With respect to your second question, there is no way, or the patent itself discloses filters that prevent, and you cannot, I mean, at the time of the invention, you couldn't transmit over the wire technology, over the power line technology, without having filters and firewalls and explicit encapsulation technology to, because otherwise it's just going to the On page 12 of the BlueBerry, you say that even if SUH, or SUH, is presumed enabled, you quote, provided argument and expert testimony rebutting the same. Where's that argument and expert testimony on the record? Where's the, well, Your Honor, I believe that our brief, as it relates to the substitution argument, is one place where the board found that you can substitute a modem, a power line modem, for a phone modem. The reason I'm asking the question is, you didn't cite anything in this statement, in your statement of facts. Yes, Your Honor. I mean, it was a statement, it was a statement of the summary of the case and the statement of facts. As we go through the brief, though, if you look at paragraph B on page 15 of the BlueBrief. That wasn't part of the summary of the case. I wouldn't be asking you this question. It's part of the statement of facts. You don't have any citation. That's why I'm asking. Because it's important. Well, Your Honor, I mean, it is a, you're talking about page 12 of the BlueBrief? At the top. Even the first full sentence. Even so? Even so? And then the next sentence is, to meet its burden, patent owner provided argument and expert testimony rebutting same. But you don't tell me what it is. Your Honor, the entire brief is what it is. I mean, the entire brief is, the patent owner provided argument and expert testimony that nothing in S.U.H. provides the necessary component of a modem or communication over an external power line network. So it's just PassM? That's, I mean, you can consider it PassM, Your Honor. But I believe that the rest of the argument absolutely encapsulates the issue, which, in our opinion, is that Dr. Ackle, when pressed and asked, could you, at the time of the invention, what technologies existed to convert power line signals from an internal home, post-metered home, to an external power line network? He said the 524 patent. The 524 patent is, he cites the patent to invalidate the patent. That's the teaching. He says the teaching is in the 524 patent, and therefore one of ordinary skill in the art would know how to do it. I mean, he's citing the patent to invalidate the very patent that he's citing. That's our point. That's why this is so, in our opinion, egregious, that he's citing an abandoned patent application for the proposition that one would know how to do it, and the way you would know how to do it is to look to the 524 patent itself. And that is, and if you want the page line or the appendix site for that, I can tell you, I can show you exactly where he made that, he gave that testimony. If there are any other questions, I'm happy to, I'm happy to take them. No, I think we're fine. Thank you. I'll reserve my rebuttal time. Thank you. Okay. That's good. Mr. Bradley. May it please the court. Did you agree with your friend and the board that Claim 17 is illustrious? Yes, Your Honor, and certainly the only claim disputed, and truly the only limitation disputed is the last limitation of Claim 17. So that's the only thing we're really needing to address here on appeal. Judge Wallach, turning to your question a moment ago, to my colleague here about page 12 of the blue brief, where without citation, Smart Meter says that to meet its burden, patent owner provided argument and expert testimony rebutting the presumption of validity. We too do not find it in the record. He says it's passem. The passem is repeated non-citation to the argument. In fact, when you look at what the board held, the board held and found that Smart Meter, this is a quote, Smart Meter does not acknowledge this presumption, much less come forward with sufficient argument or evidence to support its assertion. We put that in our red brief, highlighted it. They opted not to file a reply. There is no evidence supporting their argument. This is a straightforward case. We have a single reference with a single limitation of a single claim at issue. It's well supported by substantial evidence, the board's finding of non-obviousness and unpatentability. The board very meticulously went through the evidence relating to the Sue reference, the testimony of our expert, Dr. Ackle, at times the admissions by Smart Meter and its expert, Mr. Blackburn, and went through and all of that provides more than enough substantial evidence to support the board's determination of unpatentability. Their sole argument was that Sue's disclosure is not enabling. They admitted in three times in their patent owner response. They acknowledged, this is a quote, Sue acknowledges powerline transmission over an external powerline network. There was another place, quote, Patent owner acknowledges that Sue pays lip service to transmitting consumption information over an external powerline. Now, they call it lip service. What that means is, yes, Sue says those words. It's in there, but we're not going to take it at face value. We're going to say it's not enabling. But again, the board found that they didn't even acknowledge that it's presumed to be enabling, much less come forward with evidence to rebut it. And that's where we are. This is a straightforward case where the board's findings are well supported by substantial evidence. We put all these points and more in our red brief. They opted not even to file a reply responding to it, including all the arguments that they've waived, including for claim construction and more. This ought to be affirmed. Unless there's questions by the court, I'll sit down and I've made the points. Thank you very much, counsel. We have no questions. Your Honor, the argument by Mr. Bradley, or the statement by Mr. Bradley highlights the point. This was yet another case where the PTAB has essentially shifted the burden to the patentee to prove validity yet again, as opposed to the petitioner proving by preponderance of the evidence that the patent was invalid. This is, in our opinion, I mean, the non- I don't understand that argument. I mean, the petitioner put forth the SAW reference and explained how it invalidated the patent and the board agreed with them. Are you saying that the petitioner has to go further and affirmatively establish that every single prior art reference is enabled too? No, Your Honor. But there's a presumption of enablement of SAW. We're at a patent. It's not a patent. And we made that argument in our brief that SAW is not a patent. It's a patent application. It was an abandoned patent application. What difference does that make? Are you adding an additional requirement that when petitioners rely on prior art, that it has to show that it was enabled? Prior than it just discloses. Well, our argument, Your Honor, is that it doesn't disclose. It doesn't disclose communications over an external power line argument. That's a different question than whether it's enabled or not. What it discloses. Well, I believe the presumption only goes to issued patents. And SAW is not an issued patent. It's not enabled the argument that they're making. Is it prior art? It is prior art. There's no question that it's prior art. We're not disputing that it's prior art. It discloses an external power line. It discloses an external power line because it discloses connection to an external power line network. What it does not disclose is communication over that external power line, Your Honor. There's nowhere in SAW... But the board disagreed with you on that. The board disagreed. The board disagreed with their expert who claimed that there was no technology that allowed transmission over an external power line in SAW. By there, you mean the other side? I mean, by either side. By anybody but the patent owner. Their expert, Dr. Ackle, testified that the only place you could find that was in the 524 patent itself. That was the only place where it was disclosed. If there are no more questions, I thank you for your time. And I would also like to thank Mr. Bradley and his colleagues for... They've been wonderful adversaries and have done things in the spirit of the way lawyers ought to behave. Very good. Thank you for that comment. And we thank counsel for their arguments.